Thank you, Your Honor. Good morning, and may it please the Court. My name is Ryan Kaplan, and I represent the appellants First One Lending Corp. and John Becerra. I'd like to reserve four minutes for rebuttal. Still down the crux of the issue before this Court is how to assess the recoverability of a settlement of potentially covered claims reached during a period of time when the insurance company was wrongfully refusing to provide the defense owed under the liability policy. Informing that analysis are the undisputed and resolved facts that a. Hartford owed a duty to defend the NACA action, b. Hartford was in breach of that duty to defend during the course of the NACA action, and c. In the absence of that insurer-provided defense, the insureds, the appellants here, settled the NACA claims in a reasonable and under those facts, a presumption exists under California law that the resulting settlement is covered unless the insurance company can rebut the presumption by proving that the settlement was unreasonable, was the product of fraud or collusion, or was clearly allocable to uncovered claims. The District Court below erred in failing to address or apply this presumption and instead ruling in the face of contradictory evidence that the entirety of the resulting settlement constituted uninsurable disgorgement or restitution. Is first one a going concern? I'm sorry? Is first one a going concern? I'm not quite sure. Is it still a business today? It is, your honor. So if you're successful in obtaining the 1.5 million dollars, who is that going to? Is it going to first one or is it going to Mr. Sierra? We go to first one, your honor. Further exacerbating the District Court's error was the fact that the District Court also failed to apply the standard on summary judgment. The ruling on which we're appealing is a granting of Hartford's motion for summary judgment. Hartford, in light of the presumption, carried the burden of proof both to establish the uncovered nature of the settlement, if that's the course it was intending to go, which it appears it was, and all reasonable inferences were required to be applied in the favor of the non-moving party, which were the appellants here. But what about the, what about in particular the $375,000, essentially the quarter, quarter of the settlement? Because at least to that amount, Mr. Becerra, you know, in his criminal case, you know, pretty clearly indicated that that amount was intended to be reserved for homeowners for restitution. So why would that at least not create a dispute of material fact as to that portion of it? Well, we would argue two things, your honor. Number one, what Mr. Becerra was echoing were the statements made by NACA's counsel that they had used the rest, or the compensatory nature of the NACA settlement towards those funds, or towards that purpose, towards the, towards the customers. But we would agree with you in the sense that at the very least that would create a tribal issue of disputed fact in terms of what amounts of the NACA settlement could in fact, if at all, be considered to be uninsurable restitution or disgorgement. This court has recognized in a number of cases, Pan Pacific, United, United Western Grocers, that where there is a potential disparity on the undisputed fact, or in the, in the record, in terms of what amounts could be considered restitution, what amounts could be considered disgorgement, or what amounts could be considered compensatory. The tribal issue of fact exists that precludes summary judgment when looking back at a settlement reached in the absence of provided defense. We would, we obviously take the position that the characterization in the context of the Connecticut action does not alter what the NACA settlement really was, which is best evidenced by the claims that existed at the time of the settlement, which is the best evidence of that is the operative complaint, the Second Amendment complaint, as well as the settlement agreement itself, which is a integrated document. And within the four corners of that document, the text of the document make clear that the settlement was compensatory for damages that NACA alleged it incurred as a result of First One's alleged false advertising and false affiliation claims under the under the Lanham Act, as well as the restitution or are deemed to be disgorgement would be allocable would would clearly be allocable to claims that are not covered by insurance policy. I wasn't clear about the relationship between uncovered claims and what's essentially a remedy, which is restitution and disgorgement. Could you address that, please? Yes, Your Honor, I'm not sure we have uncovered claims here. There's really been no disagreement in terms of that the claims themselves, the substantive nature of the claims have been uncovered. The challenge has really been to the remedy. And with respect to the remedy, it is important to understand that in the context of the Lanham Act, in particular, a Lanham Act plaintiff can measure its damages based off the defendant's profits as a surrogate for its damages. In Section 1117A of the Lanham Act, which is the remedy section, it specifically says that an award based on the defendant's profits is compensatory. It's not a penalty, it's compensatory. And that's important because under a line of cases with the cases that are addressing whether or not something that could be conceivably considered restitution or disgorgement is insurable, those cases simultaneously recognize that even if relief could be considered in some component to be restitutionary, disgorgement, or ill-gotten gains, as long as there is some compensatory component to it, it nevertheless retains its insurability. So in the prior case, my colleagues ruled, over my dissent, that the Lanham Act trademark infringement claim didn't require a showing of wilfulness. So would any recovery under that claim, if that had been paid to victims of First Ones policies, would that be deemed to be coverable or uncoverable? If that had been paid out as, quote, restitution, does that make any difference? It would be covered in the sense, because it remains compensatory to the plaintiff in the Lanham Act claim. Recall, there was no dispute that no money was paid from NACA to First One to be restituted to NACA. NACA was not acting on behalf of homeowners. NACA was not standing in the shoes of homeowners. It had not even signed any claims of homeowners. So when you look at the claims that are actually at issue in this liability policy, we're talking about competitors in the marketplace. To the extent NACA decided to use those funds for whatever subjective purpose it had, that doesn't transform the compensatory nature. Now, I think what you were maybe alluding to with the requirement of willfulness is, was that a requirement to even get an award of damages premised off the defendant's profits, and it was not. That was confirmed last year in the Romag case by the U.S. Supreme Court, which held that the 1999 amendment to the Lanham Act made clear that since that amendment, it has never been a requirement. What are we supposed to make of the fact that Mr. Becerra went into federal court in Connecticut, and although he may have been careful in saying NACA doesn't have an obligation, it seems there's a lot of evidence on that record that it was at least contemplated as part of the settlement that NACA would reimburse homeowners. I mean, he made those statements to another judge, a federal judge across the country. Why don't those at least create a disputed material practice to some of this? And again, I would say as a default position, we agree that it does create a disputed issue of material fact, which would actually support a remand of the summary judgment ruling entered in favor of Hartford. But to your point about what should we make of that, I would say a few things, Your Honor. Number one, first one, a separate entity, a separate legal entity in the eyes of the law was not a party to those Connecticut proceedings. First one is a separate insured under the policy, and the duties flow separately to first one. Number two, it's unclear on the record whether those statements did in fact result in any change of position or benefit to Mr. Becerra in the Connecticut proceedings. It seems to be among a number of things that were discussed, certainly, but the court in those proceedings very clearly does not make a finding that those amounts were or were not restituted in any sense, whether it be actual restitution or effective restitution. As you have just explained it, that would suggest that at least as to that smaller amount, which is what, about $375,000, that there is an issue of fact on that as to the legal implications. I would say if the court were to entertain the judicial estoppel argument, then perhaps, yes, there's an issue of fact in terms of that amount. It's actually $344,000. The $374,000 was what the prosecution or the prosecutor in the Connecticut Act was able to identify, $344,000 of which NACA had informed them had been paid to homeowners. But we also look at the fact that through discovery in this action, in particular, discovery with NACA, NACA was unable to produce any evidence of any payments to homeowners. So we're really just working off of... Did they need to? Well, I mean, in response to discovery, yeah. I'm asking the question, if it was contemplated that a certain portion of the settlement was to be used for homeowner restitution, and that was actually the understanding of the parties, does it matter whether NACA actually followed through on that later? Well, I don't think the settlement agreement itself bears that it was the contemplation of the parties. If you look at the NACA action complaint, it pleads restitution in the prayer for relief. Restitution is pledged in the alternative to an award of damages based off of first one's profits. And the settlement agreement does not require any payments made to customers. And Mr. Marks, the CEO and PMK of NACA, had to concede during his deposition that NACA was under no obligation and that the settlement agreement spoke for itself in terms of what was contemplated in the settlement. Did you want to reserve time for rebuttal, Mr. Smith? Thank you very much. Mr. Smith, you'll need to unmute yourself. You're still muted. Thank you. Is this better? That is a lot better. World of technology. Ted Smith with Johnston Smith for defendant and appellant Hartford Casualty Insurance Company. Good morning, your honors. Good morning. My friend on the other side has indicated that there is a presumption of coverage that has never been the law in California, and it should not be the law that's applied by this court. My friend has also suggested that there's some standard about conclusive evidence of clearly allocable claims to non-covered or clearly allocable amounts to non-covered claims. That is also not a standard that's been expressed in any of the cases, either cited by my friend or found by Hartford. In fact, the standard is and has always remained that in the duty to defend, there's a question of the potential for covered liability, and the duty to indemnify depends on actual liability under the policy. That gets determined by the burden of proof, which is a preponderance of the evidence. And for insuring clauses, the insured bears a burden to prove the settlement amounts fall within the insuring clause. And for exclusions, the insurance company bears the burden of proof to show by preponderance of the evidence that the settlement amounts fall within the exclusions of the policy or insurance code section 533. In 2009, the California legislature designated the charging of upfront fees for mortgage modification services. It expressly described it as an unscrupulous business practice and closed all loopholes on that practice. The California Department of Real Estate indicated that those who were charging upfront fees for document preparation services were clearly attempting to skirt that law and were providing worthless services. So do you agree that, Mr. Schmidt, do you agree if all we were to look at was a settlement agreement that between NACA and First One, that on its face, the settlement agreement would be entirely for covered claims? I do not, Your Honor. I believe that the settlement agreement on its face fails to allocate any amount of damages to any liability or claims in the underlying action. In a settlement agreement, the claims would have to be clearly allocated to an uncovered claim. Then you agree that the settlement agreement does not clearly allocate the settlement amount to uncovered claims or any portion of it. Is that correct? I agree that the settlement agreement does not clearly allocate any amount of the settlement to anything. And consequently, it wouldn't be to uncovered claims or to covered claims. Our prior decision, we held that there was at least a potential that there could be an uncovered claim. So we get to the settlement. In fact, I think the settlement was signed before the prior panel's decision. That settlement agreement also could have involved claims that are covered. Isn't that correct? It is correct that on the face of the settlement agreement, it doesn't make clear whether it involves covered or uncovered claims. So they could be covered because we already held that. If in fact, the court can find its analysis solely to the settlement agreement, but an insured should not be able to manufacture insurance coverage by making admissions in a settlement agreement given a conflict between the insured and the insurer. Once the insurer decides not to defend, to hold otherwise would allow an insured to manufacture insurance coverage that the insured did not purchase. In fact, in no case, including the cases cited by my friend on the other side, did the courts confine themselves solely to the terms of a settlement agreement. Of course, Judge Ilston in the Atmel case looked far beyond the terms of the settlement agreement, but so did the Ninth Circuit in the Pan Pacific case. It did not confine itself solely to the terms of the settlement agreement. What evidence do you have that the entire settlement agreement, all $1.5 million, was for essentially restitution to homeowners, which would not be covered? The evidence on that issue, and your honor, I'm going to answer that question, but I want to point out that insurance code 533 and two of the exclusions in the insurance policy likewise apply to preclude coverage for this settlement. It was impossible for NACA to recover any amount of sums in this case without proving willful misconduct. But we disagreed with that. So you're stuck with that ruling. I mean, I agreed with you in my prior case, but that's not what the majority held. So you're stuck with the ruling that at least some of the claims could be covered because of a land and an act trademark infringement claim. Judge Ikuda, we are stuck with the ruling that we did not meet the burden to show that in all possible worlds, the pleadings alone, which is all that we were allowed to consider on the duty to defend, because that was the information we had, that the pleadings alone did not show that all on the question of the duty to indemnify is different than the substantive law and the question of the duty to defend. The duty to defend depends on the potential. So in other words, could NACA at some point in its action have said, look, we're going to shorn of all the willfulness conduct. We're going to proceed on a Gordon variety infringement claim and show no willfulness. It could have done that. So there was a potential for covered liability. Now we're at indemnity. What was the actual liability? And for that, we look at the nature of the claims that were being resolved at the time of the settlement. So my friend cites, for example, the Inreefe feature case. In that case, the court to determine what the was inherent in the settlement itself, didn't confine itself to the settlement agreement. In fact, it said the settlement agreement does not finally establish or determine any facts. The court has accordingly considered all of the evidence supplied by the parties which could shed light on the underpinnings of the settlement. And so the court looked at the pleadings from the underlying case, but also the motions in that case. It looked at declarations submitted in the underlying case. It looked at mediation briefs. It looked at rulings from the underlying judge. I come back to the question, what evidence do you have that would show that all $1.5 million was for restitution? Judge Brass, the evidence of $1.5 million being for restitution comes largely from Mr. Becerra's attorney. In the Connecticut case, he said as part of the civil settlement, Mr. Becerra agreed to pay $1.5 million to fully compensate all of First One's customers. But he goes on to clarify that it was really a quarter of that that was for that purpose, and the rest of it was for Lanham Act and other damages. Yes, Judge Brass, the record in this case shows that Judge Carter, on at least two occasions, said that a huge amount of paper records and computers were destroyed by First One, making evidence necessary for NACA to prove its claims unavailable. What was determined in the They couldn't find the consumers who paid that revenue because the records had been destroyed. If First One destroys its records and makes it impossible to find people to give them back their money, that shouldn't be a basis to find covered liability. I guess I'm again questioning, I mean, the district court below obviously didn't mention this issue of any records destruction, but even if it did, would it have justified summary judgment in your favor? Your Honor, it would show, so we have NACA, yeah, in part, your Honor, NACA CEO testified and provided a declaration that at no point did NACA seek recovery for compensation for its injuries. It was solely seeking the disgorgement of the plaintiff's profits. Likewise, Mr. Becerra told the Connecticut court that the settlement was intended to return the money to all of First One's customers. The fact that only 374,000, and it's unclear on the record whether it's 374 or 344, Mr. Catlin suggested it's clear, but it's not. The fact that only 374 of clients was found doesn't change the nature of what the intent of the money paid was for. Now, they could only find those number of people because evidence was destroyed by First One as found by Judge Carter, and it's in the record in this case. Your Honors, I also want to emphasize that the duty to identify turns on actual coverage, not on potential coverage. With the consequence that one of the questions here is, do we need a trial to determine whether or not the liability that NACA sought to and we simply don't. All of the pleadings, all of the evidence, including the trial brief submitted a month before trial by NACA in the underlying case said we're solely seeking recovery for the plaintiff's willful misconduct, and they needed to prove willfulness as a threshold to recover disgorgement of profits. Notwithstanding the Romack case, which came out in 2020, if we look at the liability resolved by the 2013 settlement agreement and what was inherent in that agreement, that liability necessarily included willful trademark infringement. In 2013 in the Ninth Circuit, that was the only way to recover a disgorgement of profits. Consequently, Insurance Code Section 533 would apply to preclude coverage for this entire settlement regardless of restitution. While it's true Judge Guilford looked at the restitutionary element and was troubled that Mr. Becerra had gone into court in Connecticut and said, I paid the settlement as restitution for homeowners and then was coming to this court and his attorneys were arguing none of this was restitutionary. It was all compensatory. We argued below and we argued in our brief here that Insurance Code 533 also applies to preclude coverage for the entire settlement. Consequently, first looking solely at the settlement agreement would be contrary to how courts have analyzed whether there's a duty to indemnify applying California law up until this case. So I believe you would look at the entire universe of information that existed at the time of settlement to see what claims were resolved. Second, you're not asking was there a potential for NACA to have somehow asserted a claim or sought a recovery that was shorn of this willfulness. You're asking did NACA in fact seek to impose liability for something other than willfulness conduct and the truth is they didn't. At all times they sought solely willfulness cut solely liability for willfulness conduct. So regardless of what the potential was at the time tender in the underlying action which therefore triggered the duty to defend what actually happened was NACA never realized the potential of asserting a non-willful claim and at all times consistently asserted solely a willful claim. That went right up until the day of the settlement. If you look at the Mr. Kaplan suggests that somehow NACA was seeking disgorgement as a proxy for damages that's simply inaccurate. In order to recover that under the Audrey case issued by this court and the Liberty Pen case NACA would have needed to show that it lost profits and NACA at no time was prepared to show that it lost profits. If you're right about all these things then the second appeal in this case should have come out the other way. I disagree your honor. The second appeal came out the way it did because the substantive law on the second appeal was different. The substantive law was was there a potential that NACA could have sought covered liability and that potential creates a duty to defend. The issue here has nothing to do with what NACA potentially could have done. It's what was actually happening in the underlying case. This is the duty to indemnify. It depends on actual coverage under the policy not potential liability under the policy. I also want to clarify another point that my friend made on the other side when he suggested that first one was still a going concern and it would receive any recovery in this case. The record belies his statement that that's the case. If you look at SER 124 right from the Basara's own mouth in his letter to Judge Hall he said I closed first one in 2012 and indeed if you look at the record including the order freezing assets from the underlying case you'll see that and and the motion for uh to opposing the second amended complaint you'll you'll see that first one has it has said we've closed our business we're done and we did it in the preliminary injunction that issued in this case. Judge Carter found that NACA that first one and Mr. Basara continued to infringe on continue to falsely associate with NACA and HUD right up until the point of the preliminary injunction after the time when he was sued by NACA. This is not non-willful infringement at all times it was solely willful infringement. Mr. Smith you have about a half minute left to wrap up. Your Honors I would ask you to consider that currently we're asking whether there's actual coverage for the settlement agreement but not for the settlement but the settlement that was entered into. You cannot confine yourself solely to the settlement agreement without being contrary to the Pan-Pacific case, the Atmel case, the Inree Feature case that my friend cites as well as the farmers case that he cites. There's no support for that considering all the evidence section 533 the financial services exclusion and the restitution makes the amounts paid to resolve solely by Mr. Basara uninsurable under California law and under the insurance policy. Thank you. Thank you. Mr. Kaplan. Thank you, Your Honors. I'd like to start off by addressing the presumption issue that Hartford started its rebuttal with and that is that this presumption that we've articulated does not exist in California law. We would respectfully disagree. The access surplus case, the navigator specialty case, as well as this court's national steel versus golden eagle case all recognize this presumption and the reason the presumption is important here is because in the context of a motion for summary judgment where the burden of proof is particularly important as the moving party as well as the rebutting party, the result is Hartford has to actually carry the burden to show the uncovered nature of the resulting settlement. The resulting settlement that is occasioned by the fact that Hartford breached its duty to defend. Hartford could have been involved in the NACA action all along and it would not find itself in the position of having to second guess this settlement later. It's by virtue of Hartford's failure to honor its duty to defend that we find ourselves in the position we're in today. The presumption as it exists finds the presumption of coverage unless Hartford can rebut that which we submit it has failed to do. Turning to additional points made by Hartford, we do in fact have a settlement agreement that very expressly embodies covered claims. It says it references the Lanham Act claims, it references the damages allegedly caused by first ones and Mr. Becerra's conduct and it says the payment is made in compensation for those damages. With respect to the argument under 533, it was not an issue ruled upon by Judge Guilford below but it's important to point out that there was no findings of willfulness. So again, this is why the presumption is so important because what Hartford is saying it can do today is come into court years after the fact and say and speculate as to how the NACA action would have gone to court and based purely on that speculation for which there was no finding of willfulness say it should not result in a covered loss. That can't be the case. When you have this uncertainty, this concept of uncertainty under the law occasioned by the insurance company's breach, the presumption necessarily falls to force the insurance company to prove uncovered claims and unable to do so here. Willfulness is not required under the Lanham Act and there was no findings of willfulness in the NACA action. Mr. Smith was unable to identify conclusive evidence that the entirety of the amount is attributed to uninsurable disgorgement or willful conduct and that's the insurance company's burden not just under the presumption but under the summary judgment standard. We would submit that Hartford failed to meet its burden under either standard and we would request that the court remand the matter below. Thank you. The case just argued first one lending versus Hartford casualty is submitted. I thank both counsel for your argument this morning and we'll now hear the case of Norbert versus the city and county of San Francisco.
judges: McKeown, Ikuta, Bress